UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH FONG,

      Plaintiff,

v.                                               Case No.  8:10-cv-1544-T-24 TGW

CITY OF ZEPHYRHILLS, FLORIDA,
and STEVEN SPINA, in his official and
individual capacities,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 20).  Plaintiff opposes the motion.  (Doc. No. 28).

**I.  Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II. Background

Plaintiff Kenneth Fong was employed as a police officer by the police department of Defendant City of Zephyrhills, Florida ("the City") from October 19, 2006 until he was terminated on April 16, 2007. During Fong's employment, the police chief was Russell Barnes. The police chief reports to the City Manager, Defendant Steven Spina.

Fong was admonished several times while employed at the Zephyrhills police department ("ZPD"). One of his supervisors, Sergeant O'Nolan, counseled Fong for being late six times during a one month period from November 29, 2006 through December 26, 2006. Another supervisor, Sergeant Brewer, counseled Fong for being late two days in a row in February of 2007. Thereafter, on February 16, 2007, Fong was late again, and he was suspended for twelve hours without pay.

On March 28, 2007, the ZPD received a call from a citizen, Mr. Tracy Griffin, who reported that he saw Fong's police car being driven erratically. Chief Barnes investigated the incident, and on Friday, April 13, 2007, Barnes concluded that Fong had been driving erratically. Thereafter, on Monday, April 16, 2007, Fong's employment was terminated. In an April 17, 2007 memo written by Barnes regarding Fong's termination, Barnes stated:

> [After investigating the complaint of erratic driving, I concluded that Fong drove erratically because] he was about to be late to work again . . . . Officer Fong was counseled numerous times during FTO for being tardy and was given a Written Admonishment. He was counseled for the same thing again after completing FTO, given another Written Admonishment and later a one-day suspension for yet another tardiness. He was not late [on the date of the erratic driving complaint] by virtue of the policy violations [i.e., the erratic driving] committed to be on time. The continued tardiness issue is not acceptable for a tenured officer, much less a probationary officer. His employment was terminated as of 1900 hours yesterday.

(Doc. No. 25, Fong depo, Ex. 10). In conjunction with his termination, a document titled "Exit

2

Interview Guide," was filled out and signed by Fong, which indicates that Fong was not eligible for rehire. (Doc. No. 25, Fong depo, Ex. 11).

In May of 2008, Fong contacted Spina to ask Spina to look into the erratic driving complaint that ultimately led to Fong's termination, because Fong felt that the complaint was hindering his ability to obtain police jobs at other agencies. Spina agreed to look into the matter, as long as Fong agreed to execute a Release Agreement, in which he released the City for any claims he may have relating to his prior employment with the ZPD. Fong executed the Release Agreement in June of 2008, and Spina looked into the erratic driving complaint.

Spina determined that Fong should have been exonerated from the erratic driving complaint, because Griffin, the complainant, had not been entirely truthful. Furthermore, while investigating the erratic driving complaint, Spina learned that some of the police clocks were seven to eight minutes ahead of real time, and as such, Spina stated in a June 16, 2008 memo that the time difference may explain several of the incidents when Fong was determined to be late. (Doc. No. 25, Fong depo, Ex. 3).

Thereafter, then-Operations Captain David Shears and others encouraged Fong to report to Spina suspected payroll fraud by Sergeant Perrault and then-Chief Barnes. On July 29, 2008, Fong told Spina about Sergeant Perrault getting paid by the City at the same time that he was working for, and being paid by, Pasco Hernando Community College and then-Chief Barnes' covering up Perrault's fraud. Spina investigated the matter, and Perrault resigned in early August of 2008, and Barnes resigned in mid-August of 2008 after Spina indicated that he would be recommending that Barnes be terminated.[1] The alleged payroll fraud attracted media

---

[1] Thereafter, Shears became the police chief.

attention and negative publicity for the ZPD during July and August of 2008. (Doc. No. 29, Spina depo, p. 57).

In late August and early September of 2008, after Barnes and Perrault resigned, Fong informally discussed with Chief Shears and Spina about the possibility of coming back to work for the ZPD. When Fong discussed it with Chief Shears, Shears would evade the question or state that the decision was Spina's to make. (Doc. No. 23, Fong depo, p. 126-27). When Fong discussed it with Spina, Spina said that he would look into it and would think about it. (Doc. No. 23, Fong depo, p. 127-28).

On September 4, 2008, Fong formally asked Spina to be reinstated to his prior position as a police officer. On September 10, 2008, Spina wrote to Fong and denied his request for reinstatement. On September 12, 2008, Fong emailed Spina and stated that he would like to apply for an open police officer position.

At some point, Fong learned that another police officer had improperly run Fong's driver's license through a Florida Department of Law Enforcement ("FDLE") database. Fong complained about this to the ZPD and told Spina that he was going to file a complaint with the FDLE. In response, Spina said to Fong, "That's why you're not here." (Doc. No. 23, Fong depo, p. 133-35). Fong interpreted Spina's statement to mean that Fong was not rehired because he was the one who filed the complaint about Barnes and Perrault's payroll fraud.

On September 17, 2008, Fong emailed Spina his application for one of three open patrol officer positions. Spina emailed Fong back an hour later stating that he would forward Fong's application to the ZPD and would follow up on its status. Fong was not rehired, but there are several different versions of events regarding who was involved in the decision not to rehire him

and the reason for that decision.

Spina contends that he was not involved in the decision not to rehire Fong, and he merely forwarded Fong's application to the ZPD, where it was Chief Shears' decision whether to rehire Fong. However, there is evidence that Spina spoke with Chief Shears about Fong's application, which Fong contends indicates that Spina may have been involved in the decision not to rehire him. (Doc. No. 29, Spina depo, p. 39-40, 46; Doc. No. 29, McKinney depo, p. 20). Furthermore, Fong points out that when he informally discussed working for the police department with Chief Shears, Shears stated that it was Spina's decision to make. Additionally, Fong points out that Spina directly responded to, and denied, Fong's request for reinstatement.[2]

There are also inconsistencies regarding the reason why Fong was not rehired. On October 13, 2008, Sarah Neuhauser, the ZPD's background investigator,[3] sent Fong a letter stating that the ZPD was unable to process his application, because his Exit Interview indicated that he was not eligible for rehire.[4] (Doc. No. 25, Fong depo, Ex. 28). However, on July 17, 2008, prior to Fong reporting the payroll fraud to Spina, the ZPD indicated that Fong was eligible for rehire when asked by another police department for a reference.[5] (Doc. No. 25, Fong

---

[2] The Court notes that Defendants proffered evidence that Spina has never been involved in the selection of police officers below the rank of department head. (Doc. No. 29, Spina depo, p. 42; Doc. No. 29, Shears depo, p. 9). However, because this is a motion for summary judgment, the Court must construe the evidence in the light most favorable to Fong, and he has submitted evidence showing that Spina may have been involved in the decision not to rehire him.

[3] Neuhauser has since resigned from the ZPD.

[4] In May of 2010, Fong requested a copy of his personnel records, and he specifically requested a copy of the Exit Interview. Spina responded that there was not an Exit Interview in his file.

[5] On March 16, 2011, Spina executed an affidavit in which he stated for the first time that he agreed to change Fong's status to indicate that he was eligible for rehire solely in connection

depo, Ex. 31).

Chief Shears claims that he alone made the decision not to rehire Fong and that the decision was not based on Fong's Exit Interview indicating that Fong was not eligible for rehire. (Doc. No. 29, Shears depo, p. 20-21). However, Neuhauser testified at her deposition that when she told Chief Shears that Fong's Exit Interview indicated that Fong was not eligible to be rehired, Shears stated that "[t]hat's what we're going with" and that he told her to deny Fong's application based on that. (Doc. No. 30, Neuhauser depo, p. 15, 17, 23).

Chief Shears claims that the reasons he did not rehire Fong were: (1) Fong's tardiness while he was previously employed by the ZPD, and (2) Fong's disciplinary problems at the Bradenton police department in 2000, where Fong was employed prior to his initial employment with the ZPD. (Doc. No. 29, Shears depo, p. 11). Fong, however, challenges the legitimacy of Chief Shears' proffered reasons for not rehiring him. Specifically, Fong points out that the ZPD knew of Fong's alleged disciplinary problems at the Bradenton police department before the ZPD initially hired him in 2006. Additionally, Fong points out that his alleged tardiness while previously employed by the ZPD may have been due, in part, to the fact that some of the clocks were off by up to eight minutes.

After Neuhauser sent Fong the letter denying his employment application, Fong asked Spina why he was not rehired. Spina stated that bringing Fong back would not be "in the best interest of the City because of what had happened" and that Spina thought that "it's best we

---

with helping Fong gain employment at another police department. (Doc. No. 21, ¶ 11). However, when Spina was previously deposed on October 26, 2010, he never revealed this information. Furthermore, in the Release Agreement that Fong was required to execute, it states that the City will only provide Fong's dates of employment, position, and salary when responding to a reference request. (Doc. No. 25, Fong depo, Ex. 1).

move on." (Doc. No. 23, Fong depo, p. 132, 147, 149).  Additionally, Spina stated at his deposition that "there was a general consensus that [the ZPD was] . . . moving in a different direction." (Doc. No. 29, Spina depo, p. 41).  When Spina was asked at his deposition about the discussions that he had about the ZPD moving in a new direction, the following exchange occurred:

> A. . . . We wanted to go move past Barnes and Perrault and the whole summer of bad newspaper articles and bad publicity.  We wanted to get back to the business of being a Police Department.
>
> Q. And Mr. Fong was associated with that bad publicity, correct?
>
> A. Could have been.

(Doc. No. 29, Spina depo, p. 42, 44, 55).

Fong contends that, based on the above, there is a question of fact regarding whether Spina was involved in the decision not to rehire him and whether he was not rehired due to his reporting the payroll fraud.  As a result, in June of 2010, Fong filed suit against the City and Spina (in his individual capacity) for retaliating against him for exercising his First Amendment rights when reporting the payroll fraud by failing to rehire him.

### III.  Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because: (1) Fong's protected speech was not a substantial factor in the decision not to rehire him; (2) the decision not to rehire Fong would have been made even if the protected speech had not occurred; (3) Fong's claims are precluded by his execution of the Release Agreement; and (4) Spina is entitled to qualified immunity.  Accordingly, the Court will address each argument.

### A. Whether Fong's Protected Speech Was a Factor in the Decision Not to Rehire Him

Fong has asserted a First Amendment retaliation claim against Defendants, and as such, he must establish three things: (1) that his speech was constitutionally protected; (2) that the retaliatory conduct adversely affected the protected speech[6]; and (3) that there was a causal connection between the retaliatory conduct and the adverse effect on the protected speech. See Abner v. Ala. Bd. of Med. Exam'rs, 298 Fed. Appx. 909, 910 (11th Cir. 2008)(citation omitted). Defendants do not contest that Fong meets the first two elements. Instead, they argue that they are entitled to summary judgment because Fong cannot establish the third element, because he cannot show that his protected speech was a substantial factor in the decision not to rehire him.

Fong's burden of showing that his protected speech was a substantial factor in the decision not to rehire him is not a heavy one. See Kamensky v. Dean, 148 Fed. Appx. 878, 881 (11th Cir. 2005)(citation omitted). In determining whether a plaintiff shows that his protected speech was a substantial factor in the adverse decision, a court considers several factors:

> [A court considers the following]: (1) the temporal proximity between the termination and the protected activity; (2) whether any reasons for the termination were pretextual; (3) whether any comments made, or actions taken, by the employer indicate the discharge was related to the protected speech; (4) whether the asserted reason for the discharge varied; and (5) any circumstantial evidence of causation, including such facts as who initiated any internal investigations or termination proceedings, whether there is evidence of management hostility to the speech in question, or whether the employer had a motive to retaliate. There is no one factor that is outcome determinative, but all factors must be taken into account.

---

[6]Fong engaged in the protected speech after he was terminated from the ZPD, and as such, he was a private citizen at the time. "In showing that protected speech is adversely affected, a private citizen must meet an objective standard: 'A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Abner, 298 Fed. Appx. at 910 (quoting Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005)).

Id. at 881 (internal citation and quotation marks omitted).

After construing the evidence in the light most favorable to Fong, the Court finds that a genuine issue of fact exists as to whether Fong's protected speech was a motivating factor in the decision not to rehire him. The time between Fong's protected speech (July 28, 2008) and the communication of the decision not to rehire him (October 13, 2008) was relatively short. Differing reasons were given for why Fong was not rehired (which can suggest that the reasons were pretextual): (1) Spina said that the reason was that the City was moving in a different direction and needed to move past the bad publicity; (2) Shears said that the reason was due to Fong's tardiness at the ZPD and his prior disciplinary problems at the Bradenton police department; and (3) Neuhauser stated in the October 13, 2008 letter that the reason Fong was not rehired was due to the fact that his Exit Interview indicated that he was not eligible for rehire. See Clark v. Dep't of Children and Families, 2006 WL 1466923, at *5 (M.D. Fla. May 23, 2006)(stating that a defendant giving differing reasons for an adverse employment action can be evidence of pretext). Spina made comments to Fong (such as, "That's why you're not here" in response to Fong's threat of filing a complaint with the FDLE), which could be interpreted as Spina stating that Fong was not rehired because he reported the payroll fraud. Accordingly, the Court finds that Defendants' motion must be denied on this issue.

**B. Whether the Same Decision Would Have Been Made in the Absence of the Speech**

Next, Defendants argue that they are entitled to summary judgment because the decision not to rehire Fong would have been made even if Fong had not reported the payroll fraud. To establish this affirmative defense, Defendants must show that their legitimate reasons for not rehiring Fong would have motivated them to make the same decision in the absence of Fong's

9

protected speech.  See Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1293 (11th Cir. 2000)(citation omitted).  Defendants contend that the legitimate reasons for not rehiring Fong were his prior tardiness while with the ZPD and his prior disciplinary problems at the Bradenton police department.  While these reasons are sufficient to create a jury question as to whether Fong would not have been rehired in the absence of his protected speech, this evidence is not strong enough to warrant judgment as a matter of law.

Judgment as a matter of law on this issue is not warranted because the ZPD knew of Fong's prior disciplinary problems at the Bradenton police department before it initially hired Fong in 2006.  Furthermore, Spina has acknowledged that some of the police clocks were up to eight minutes ahead of real time and that the time difference may explain several of the incidents when Fong was determined to be late.  Therefore, if Spina was involved in the decision not to rehire Fong, it is questionable as to whether Fong's tardiness was a motivating reason for the decision not to rehire him.  Accordingly, the Court finds that Defendants are not entitled to summary judgment on this issue.

### C.  Fong's Execution of the Release Agreement

Next, Defendants argue that they are entitled to summary judgment because Fong's claims are precluded by his execution of the Release Agreement in June of 2008, in which he released all of his claims relating to his employment with the ZPD.  This argument has no merit, because Fong's retaliation claim did not exist at the time that he executed the Release Agreement.  Fong did not even report the payroll fraud until July 28, 2008, and he was not denied re-employment until October 13, 2008, and as such, he could not have released his retaliation claim that did not exist at the time that he executed the Release Agreement in June of

10

2008.

Defendants cite Washington v. Bellsouth Telecommunications, Inc., 285 Fed. Appx. 597 (11th Cir. 2008), in support of their argument that Fong released his retaliation claims. Specifically, Defendants argue that Fong's retaliation claims resulting from the failure to rehire him are simply an attempt to challenge his April 2007 termination, which he cannot do because he released all claims relating to his employment with, and termination from, the ZPD. The Court rejects Defendants' construction of Fong's claims in this case. Fong is not challenging his 2007 termination; instead, Fong claims that the reason he was not rehired in 2008 was because he reported the payroll fraud.[7] Accordingly, the Court denies summary judgment on this issue.

### D. Qualified Immunity

Next, Defendants argue that Spina is entitled to qualified immunity, because even if Spina was involved in the decision not to rehire Fong, there is evidence that the decision was motivated, at least in part, by lawful reasons.[8] "Pursuant to the qualified immunity doctrine, 'government officials performing discretionary functions generally are shielded from liability for

---

[7]The Court construes Fong's retaliation claims as being based on the failure to **rehire** him for one of the open patrol officer positions. The allegations in Fong's amended complaint are consistent with this construction. To the extent that Fong intended his retaliation claims to be based, in part, on the failure to **reinstate** him, such a claim would fail, because a request for reinstatement seeks to redress a termination. See Washington, 295 Fed. Appx. at 599. Since Fong executed the Release Agreement, which covers all claims relating to his initial employment and termination, his retaliation claims cannot be based on the failure to **reinstate** him, because that would be an impermissible attempt to go around the Release Agreement and resurrect a barred claim.

[8]Defendants also argue that Spina is entitled to qualified immunity because he was not involved in the decision not to rehire Fong. However, the Court agrees with Fong that there is a genuine issue of material fact regarding whether Spina was involved in the decision not to rehire him, especially since there is evidence that Shears told Fong that the decision was Spina's to make. As such, the Court cannot grant qualified immunity on that basis. Furthermore, for the purpose of analyzing whether Spina is entitled to qualified immunity (based on the argument that the decision not to rehire Fong was motivated, at least in part, by lawful motives) the Court assumes that Spina was involved in the decision.

11

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stanley, 219 F.3d at 1285 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Fong does not dispute that Spina was performing a discretionary function. Furthermore, as previously discussed, the Court has found that there is a genuine issue of material fact regarding whether Fong was retaliated against for exercising his First Amendment rights by reporting the payroll fraud. Thus, the only issue that remains is whether Spina's conduct violated clearly established law.

"For the law to be clearly established, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Stanley, 219 F.3d at 1285 (internal quotation marks and citations omitted). As explained by one court:

> The question is not whether a reasonable [government official] would know the general principle that it violates the law to [fail to hire a person] in retaliation for [their] protected speech. Instead, here, as in all qualified immunity cases, the issue is fact specific: in [2008], would a reasonable [government official] have known that [failing to hire a person] in this particular factual context violated clearly established law.

Id. at 1294.

In cases such as this one–where there is an issue regarding whether the adverse action was motivated by a lawful motive, an unlawful motive, or both lawful and unlawful motives–the analysis of whether the government official's conduct violated clearly established law (and, thus, whether he is entitled to qualified immunity) is affected by the Foy rationale. See id. at 1295-97. The Foy rationale is explained as follows:

> At least when an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field even at the summary judgment stage. Unless it, as a legal matter, is plain under the specific

>facts and circumstances of the case that the defendant's conduct–despite his having adequate lawful reasons to support the act–was the result of his unlawful motive, the defendant is entitled to immunity. Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful *and* unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.

Foy v. Holston, 94 F.3d 1528, 1534-35 (11th Cir. 1996). However, the Foy rationale only applies in certain situations:

>[The Foy rationale] only applies where the undisputed summary judgment facts establish mixed motives, as opposed to pretext. Such a result is shown where it is undisputed that (a) objectively valid reasons exist for the [decision not to hire], and (b) the [decision not to hire] was motivated, at least in part, by the objectively valid reason. But where (b) is disputed, the case retains the possibility of being a pretext case–objectively valid reasons for termination exist but did not [actually] motivate the [decision not to hire].

Pattee v. Georgia Ports Authority, 477 F. Supp.2d 1253, 1267 (S.D. Ga. 2006)(internal citation omitted). Thus, "it is not sufficient . . . to establish that there exists a lawful basis for a reasonable [government official to decide not to rehire Fong] . . . . Rather, in order for the Foy analysis to apply, [Spina] himself must have been actually motivated, at least in part, by that lawful basis." Stanley, 219 F.3d at 1297 n. 29.

Accordingly, if the Court finds as a matter of law that Spina's decision not to rehire Fong was actually motivated, at least in part, by lawful reasons, then the Foy rationale would apply and Spina would be entitled to qualified immunity.[9] This is because it was not clearly established in 2008 that Spina's decision not to rehire Fong could not be based on both lawful and unlawful reasons. However, as explained below, the Court concludes that a genuine issue of

---

[9]Stated differently, if it is undisputable that, despite Fong's protected speech, Spina would have rehired Fong if Fong did not have the prior disciplinary and tardiness problems, then Spina would be entitled to qualified immunity. See Stanley, 219 F.3d at 1297.

13

fact exists regarding whether Spina's decision not to rehire Fong was actually motivated, to any extent, by lawful reasons.

The evidence in this case shows that, other than Fong's allegation that Spina was involved in the decision whether to rehire him, Spina has never been involved in the selection of police officers below the rank of department head. (Doc. No. 29, Spina depo, p. 42; Doc. No. 29, Shears depo, p. 9). However, a jury could find that Spina was involved in the decision not to rehire Fong (based on the evidence that Shears told Fong that it was Spina's decision to make), and they could also find that the only reason that Spina became involved in the decision was in order to keep Fong from being rehired (in retaliation for Fong reporting the payroll fraud). Stated differently, the jury could find that Spina became involved in the decision regarding whether to rehire Fong solely in an attempt to block his employment, because otherwise, the evidence suggests that Spina has not been involved with the hiring decisions of any other police officers below the rank of department head. Additionally, Spina's comment to Fong that, "That's why you're not here" in response to Fong telling Spina that he was going to file a complaint with the FDLE can be interpreted as evidence of Spina's retaliatory animus and that his decision not to rehire Fong was because Fong had filed the complaint regarding the payroll fraud. See Tatroe v. Cobb County, Ga., 2006 WL 559437, at *16 (N.D. Ga. Mar. 7, 2006)(denying the defendant's claim of qualified immunity and finding that the plaintiff had produced strong evidence of retaliatory intent because the defendant had stated to the plaintiff that "none of the alleged actions would have occurred if [the plaintiff] 'hadn't opened [her] damn mouth'"), aff'd, 221 Fed. Appx. 899 (11th Cir. 2007).

Furthermore, there is a question of fact regarding whether Spina's decision not to rehire

14

Fong was actually motivated at all by the proffered legitimate reasons of Fong's prior disciplinary problems at Bradenton and his tardiness while employed by the ZPD. The ZPD knew of Fong's problems at Bradenton when the ZPD initially hired Fong in 2006, and Spina acknowledged that some of the police clocks were up to eight minutes ahead of real time and that the time difference may explain several of the incidents when Fong was determined to be late. Therefore, since there are genuine issues of fact regarding whether Spina was involved in the decision not to rehire Fong, and if so, whether Spina was actually motivated, at least in part, by a lawful reason, this Court must deny Spina qualified immunity at this time.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Doc. No. 20) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of April, 2011.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record